UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ONWY UZOIGWE,

                Plaintiff,                **REPORT AND RECOMMENDATION**
                                                                    **23 CV 7383 (HG)(LB)**

   -against-

CHARTER COMMUNICATIONS, LLC,

                Defendant.
------------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Plaintiff Onwy Uzoigwe, proceeding *pro se*, commenced this employment-related action in New York Supreme Court, County of Queens on August 23, 2023. Defendant Charter Communications, LLC d/b/a Spectrum (hereinafter "Charter") thereafter removed the action invoking the Court's diversity jurisdiction.[1] ECF No. 1. Plaintiff alleges defendant wrongfully terminated his employment with Charter and brings New York State law claims for breach of contract and negligence, and a retaliation claim under the New York City Administrative Code ("N.Y.C. Admin. Code"). Compl. ¶¶ 32–40 [ECF No. 1-1]. Defendant now moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). The Honorable Hector Gonzalez referred defendant's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendant's motion to dismiss the complaint should be granted.

## BACKGROUND

       For the purposes of defendant's motion to dismiss, all well-pleaded allegations in plaintiff's complaint are taken as true and all inferences are drawn in his favor.[2] ECF No. 1-1.

---

[1] The case was initially removed to the Southern District of New York, which transferred the action to this District.
[2] The Court also considers documents "attached to the complaint," "incorporated by reference in the complaint," or "integral to the complaint[,]" United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021) (citations and

Plaintiff was employed as a field technician by Charter from November 15, 2015, to on or around January 18, 2020. Compl. ¶¶ 1, 16, 21.[3] During his employment, plaintiff was a member of Local Union No. 3 IBEW (hereinafter "Local 3"). Id. ¶ 2. On March 28, 2017, Local 3 went on strike. Id. ¶ 5. Plaintiff initially took part in the strike but returned to work on a full-time basis on November 17, 2017. Id. ¶¶ 6–9.

Upon his return to work, Charter provided plaintiff a letter confirming his "permanent assignment" as a field technician. Id. ¶ 10. The letter states, "Your assignment is permanent so that you will continue in that assignment through and after the end of the strike by Local 3, and you will not be displaced by the returning strikers at the end of the strike." Letter dated November 17, 2017 ("2017 letter"), Ex. A [ECF No. 1-1 at 15–16]. Plaintiff signed the letter. Compl. ¶ 10. At the onboarding meeting that same day, plaintiff alleges he asked Charter's Area Vice President and head of onboarding, Wajeeha Aziz, a question about "job security," to which Aziz stated, "there is a six-step process before termination." Id.; see also Plf.'s Aff. ¶ 3 [ECF No. 39-1].

Plaintiff continued to work for defendant for over two years. Compl. ¶¶ 11–15. Plaintiff alleges that throughout that time, he maintained the requisite skills and experience to qualify him for his position and received no written warnings or discipline. Id. ¶ 4 ("Statement of Facts" section), ¶ 34 ("Background" section). Nevertheless, on January 7, 2020, Charter called plaintiff into a meeting and questioned him about allegedly stealing a meter and going to his home "while on the clock during his scheduled shift." Def.'s Mem. of Law at 4 [ECF No. 25]; see also Compl. ¶¶ 16–18. Plaintiff stated that he went to his home "to use the bathroom," which Charter stated

---

internal quotation marks omitted), as well as factual allegations made in plaintiff's papers opposing the motion to dismiss, Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (considering "further" allegations made in *pro se* plaintiff's affidavit opposing defendants' motion to dismiss).

[3] Unless noted otherwise, the paragraph numbers cited herein refer to the numbered paragraphs in the complaint's "Background" section, beginning at ECF No. 1-1 at 5.

2

violated company policy. Compl. ¶¶ 18, 21. Charter terminated plaintiff on January 18, 2020. Id. ¶ 21; see also Def.'s Mem. of Law at 4.

Plaintiff applied for New York State Unemployment Benefits ("UB"), which were initially denied but awarded on plaintiff's appeal. Compl. ¶¶ 26, 28. At his UB appeal hearing, plaintiff testified that Charter had a "six-step process" for terminations and that in terminating plaintiff, defendant had "jumped" from step one to step six. Id. ¶ 27. The UB decision entered on June 15, 2020 found that plaintiff "was advised he was discharged because he had gone home to use the bathroom[,]" and that plaintiff's conduct did "not establish disqualifying misconduct" for purposes of denying him unemployment benefits. UB Decision, Ex. C [ECF no. 1-1 at 20].

In May 2023, plaintiff decided to bring a wrongful termination lawsuit after "scrolling through pictures on his phone and [finding] a picture [he had taken] of the contract he [had] signed" with Charter.[4] Compl. ¶ 30. On August 23, 2023, plaintiff filed the instant complaint. ECF No. 1. Plaintiff seeks back pay and other compensatory damages, as well as injunctive relief. Compl. ¶ 40.

## PROCEDURAL HISTORY

Plaintiff filed his complaint in New York Supreme Court, Queens County. ECF No. 1. Defendant removed the action to the Southern District of New York on diversity grounds. Id. The case was transferred to this District on October 3, 2023. Plaintiff moved to remand the case to state court on October 6, 2023. ECF No. 10. The Court denied the motion. ECF No. 26; see also ECF Order dated December 4, 2023 (denying plaintiff's motion for reconsideration at ECF No. 29); ECF Order dated December 8, 2023 (denying plaintiff's motion for reconsideration at ECF No. 32).

---

[4] Plaintiff refers to the 2017 letter as the contract.

3

Defendant now moves to dismiss the complaint. Def.'s Mot. [ECF No. 24]. Plaintiff opposes the motion, Plf.'s Opp. [ECF Nos. 38–39], and defendant has replied. Def.'s Reply [ECF No. 41].

## LEGAL STANDARD

Defendant moves to dismiss the claims against it pursuant to Rule 12(b) of the Federal Rules of Civil Procedure "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Def.'s Mem. of Law at 12. On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

In deciding a motion to dismiss, the Court has the "obligation to construe *pro se* complaints liberally, even as [it] examine[s] such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Meadows v. United Servs., Inc., 963 F.3d 240, 243 (2d Cir. 2020) (citation omitted); see also Littlejohn v. City of New York, 795

F.3d 297, 306 (2d Cir. 2015) ("On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." (citation omitted)). In addition to the complaint, the Court may consider documents attached to the complaint, incorporated by reference therein, or that the complaint "relies heavily upon" and are "integral" to the complaint. Foreman, 19 F.4th at 106 (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss. Antrobus v. City of New York, No. 19-CV-6277, 2021 WL 848786, at *3 (E.D.N.Y. Mar. 5, 2021)[5] (citing Walker, 717 F.3d at 122 n.1).

## DISCUSSION

I.  Retaliation and Negligence Claims

Defendant seeks to dismiss plaintiff's retaliation and negligence claims, arguing that these claims are time barred. "Where jurisdiction rests upon diversity of citizenship, a federal court" must apply the statutes of limitations of the forum state. Stuart v. Am. Cyanamid Co., 158 F.3d 622, 626 (2d Cir. 1998) (citing Guar. Tr. Co. v. York, 326 U.S. 99, 108–09 (1945)). New York State's statutes of limitations apply for both plaintiff's retaliation and negligence claims.

Plaintiff brings his negligence claim "on grounds of personal injury due to defendant's unjust termination" of his employment.[6] Compl. ¶ 40. Under New York State law, a personal injury claim based on negligence is subject to a three-year statute of limitations. New York Civil Practice Law and Rules ("CPLR") § 214(4); see also Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 391 (E.D.N.Y. 2018) ("According to section 214 of the [CPLR], the statute of

---

[5] The Clerk of Court is respectfully directed to send plaintiff the attached copies of all the unreported cases cited herein.
[6] Plaintiff cites to New York's comparative negligence statute, CPLR § 1411, which pertains to "recovery of damages when contributory negligence or assumption of risk is established." Compl. ¶ 40. This statute is inapposite to plaintiff's claims. The Court therefore construes plaintiff's negligence claim as arising under New York common law.

5

limitations for a negligence claim is three years."). Such a claim "accrues upon the date of injury…even if the plaintiff is unaware that he or she has a cause of action at the time of injury[.]" Kampuries v. Am. Honda Motor Co., 204 F. Supp. 3d 484, 490–91 (E.D.N.Y. 2016) (citations, internal quotation marks, and alterations omitted). Here, plaintiff's claim accrued on January 18, 2020, the date plaintiff was terminated by defendant.[7] Thus, plaintiff had until January 18, 2023 to file his claim. As plaintiff did not commence this action until August 23, 2023, his negligence claim is time barred.

Plaintiff's retaliation claim is also time barred. Plaintiff brings his retaliation claim pursuant to New York City's Temporary Schedule Change Law, N.Y.C. Admin. Code § 20-1262. Under New York City law, the statute of limitations for a retaliation claim is two years from the date plaintiff "knew or should have known of the alleged violation." Compl. ¶ 37; N.Y.C. Admin. Code § 20-1211. Again, plaintiff's claim accrued on the date of his termination, January 18, 2020. On that date, he knew or should have known that his termination may have been retaliatory. Accordingly, the statute of limitations for plaintiff's retaliation claim expired on January 18, 2022, and his retaliation claim is time barred.

Plaintiff argues that his negligence and retaliation claims were equitably tolled. This Court disagrees. Plaintiff alleges that he "forgot all about" the 2017 letter[8] and only "checked to see" if he could bring this action after finding a photo of the letter on his phone in May 2023. Compl. ¶¶ 30–31. However, plaintiff's alleged discovery of the 2017 letter on his phone does not toll the accrual of either of plaintiff's claim. Keitt v. N.Y.C., 882 F. Supp. 2d 412, 437 (S.D.N.Y. 2011)

---

[7] The injury alleged in this action is plaintiff's wrongful termination, and thus the date of accrual is the date plaintiff's employment ended, not the date he stopped receiving unemployment benefits, as plaintiff incorrectly states. See Plf.'s Mem. of Law at 10 [ECF No. 39]; see also Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (("[T]he proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act becomes painful.") (quoting Chardon v. Fernandez, 454 U.S. 6, 8 (1981)) (emphasis in original)).
[8] Plaintiff also alleges that the 2017 letter was a "contract giving [plaintiff] a permanent assignment" with defendant and thus forms the basis for his claims. Compl. ¶¶ 10 n.1, 30; see also Plf.'s Mem. of Law. at 15.

(rejecting plaintiff's argument that his claims accrued at the time of "discovery that he had grounds for such a suit" because accrual "does not depend on plaintiff's knowledge of the law, but rather on a plaintiff's knowledge of the injury." (citation, internal quotation marks, and alterations omitted)); see also Kantor-Hopkins v. Cyberzone Health Club, No. 06-CV-643, 2007 WL 2687665, at *7 (E.D.N.Y. Sep. 10, 2007) ("*[P]ro se* status and ignorance of the law do not merit equitable tolling" of the statute of limitations (citation and internal quotation marks omitted)).

The Court is likewise unpersuaded by plaintiff's argument that various New York State Executive Orders ("EOs")[9] enacted during the COVID-19 pandemic "added 228 days" to the applicable statutes of limitations here. Plf.'s Mem. of Law at 10 [ECF No. 39]. On March 7, 2020, Governor Cuomo issued Executive Order 202.8 declaring that, "[i]n accordance with the directive…to limit court operations to essential matters during the pendency of the COVID-19 health crisis, any specific time limit for the commencement…of any legal action…is hereby tolled from the date of this executive order until April 19, 2020." New York State Executive Order 202.8. This EO was extended by "a series of nine subsequent [EOs]," with the last extension ending on November 3, 2020, for a total period of 228 days. Barry v. Royal Air Maroc, No. 21-CV-8481, 2022 WL 3215050, at *4 (S.D.N.Y. July 8, 2022), report and recommendation adopted, No. 21-CV-8481, 2022 WL 3214928 (S.D.N.Y. Aug. 9, 2022) (citation and internal quotation marks omitted). While some courts strictly interpret the word 'toll' in EO 202.8 to mean a 228-day extension on limitations periods for *all* claims, see, e.g., Bell v. Saunders, No. 20-CV-256, 2022 WL 2064872, at *5 (N.D.N.Y. June 8, 2022) (finding the plaintiff's claim was tolled for 228 days), most courts, including in this District, have found that EO 202.8 and subsequent EOs *only* applied

---

[9] Plaintiff cites "Exhibit F" as the EO supporting his argument. Plf.'s Mem. of Law at 10. However, Exhibit F is a memorandum and order from March 2016, which does not include or refer to any EO issued by New York State in 2020. See Plf.'s Opp, Ex. F [ECF No. 39-9].

to limitations periods for claims that would have otherwise expired during the time when these EOs were in effect, between March 20, 2020 and November 3, 2020 (the "emergency period").[10] See Loeb v. Cnty. of Suffolk, No. 22-CV-6410, 2023 WL 4163117, at *3 (E.D.N.Y. June 23, 2023) (finding plaintiff's claims did not expire during the emergency period and thus his claims were time barred); see also Barry, 2022 WL 3215050, at *4 (("A number of New York courts have held that [EO] 202.8…extended limitations periods that would otherwise have expired *between* March 3 and November 3, 2020, but did not lengthen periods that expired *after* November 3, 2020.") (emphasis in original)). This Court adopts the majority view of these EOs and their effect on limitations periods that expired during the emergency period.

Accordingly, because plaintiff's retaliation and negligence claims did not expire during the emergency period, any tolling under EO 202.8 and subsequent EOs does not apply. While the Court acknowledges the "difficulty that Covid caused" for plaintiff, Plf.'s Mem. of Law at 9, the purpose of these EOs was to "preserve litigants' rights" during a time when courthouses were closed to all but essential matters, and litigants faced "extraordinary difficulties" in accessing the courthouse and "utilizing courthouse services" as a result. Loeb, 2023 WL 4163117, at *3. The EOs did not "provide an unwarranted windfall to [all] litigants." Id.

---

[10] Some courts define this distinction as a 'suspension' rather than a 'toll' of the limitations period. Barry, 2022 WL 3215050, at *4 ("A number of New York courts have held that EO 202.8 'suspended' rather than 'tolled' the time period to which it applied, and thus extended limitations periods that would otherwise have expired *between* March 3, 2020 and November 3, 2020, but did not lengthen periods that expired *after* November 3, 2020." (citation omitted)). Other courts define 'suspension' as a "delay" of the "expiration of the time period *until* the end date of the suspension[,]" such that any claims expiring during the suspension must be filed immediately after the end of the suspension period. Brash v. Richards, 195 A.D.3d 582, 582–83, 585 (2d Dep't 2021) (finding that the appellant's appeal was timely, as New York's EOs *tolled* rather than *suspended* "filing deadlines…until November 3, 2020."). Whether 'suspension' or 'toll' or 'extension' is the more appropriate term for defining the effect of these EOs, the result here is the same: plaintiff's claims were untimely filed. The EOs "merely stopped the running of any applicable period of limitations for the 228 day period of time between March 3, 2020 and November 3, 2020. Contrary to plaintiff's claims, the executive orders did not extend everyone's statute of limitations period for an additional 228 days." Cruz v. Guaba, 74 Misc. 3d 1207(A) (N.Y. Sup. Ct. 2022).

In sum, because plaintiff did not file the instant complaint until August 23, 2023, defendant's motion to dismiss plaintiff's retaliation and negligence claims should be granted, as these claims are time barred.

II.     Breach of Contract Claim

Defendant seeks to dismiss plaintiff's breach of contract claim, arguing that the 2017 letter that plaintiff signed and the "verbal assurances" he received from Area Vice President Aziz do not, taken together, constitute a valid employment contract. Defendant further argues that even if plaintiff could allege the existence of a contract, plaintiff remained an at-will employee. Def.'s Mem. of Law at 1–2, 7. Plaintiff alleges that he "had a contract with [defendant] that stated his position was permanent" and that defendant breached the alleged contract by terminating him without "good cause." Compl. ¶ 35.

To allege a breach of contract claim under New York Law, plaintiff must demonstrate "(1) the existence of a contract, (2) performance by [plaintiff as] the party seeking recovery, (3) nonperformance by [defendant], and (4) damages attributable to the breach." Kramer v. N.Y.C. Bd. of Educ., 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010) (quoting RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC, 156 F. App'x 349, 350–51 (2d Cir. 2005) (summary order)). New York is an "employment-at-will" state,[11] and thus employees hired for an indefinite or unspecified term are "presumed to be at will" and their employment "freely terminable by either party at any time without cause or notice." Brown v. Daikin America Inc., 756 F.3d 219, 231 (2d Cir. 2014)

---

[11] Plaintiff states in a footnote that "permanent employment" is employment that continues "indefinitely and until either party wishes to sever relation for some good reason." Compl. ¶ 35 n.4. In support of this statement, plaintiff cites a decision from a state court in California. California case law is irrelevant to this Court's analysis. Furthermore, while New York City recently enacted a "Wrongful Discharge Law" protecting "employees of large fast-food chains in New York City from arbitrary terminations and reductions in hours," New York State is otherwise an "at-will employment" state. Rest. L. Ctr. v. City of New York, 90 F.4th 101, 105 (2d Cir. 2024) (upholding the City law as constitutional).

(citation omitted). An at-will-employment relationship is "indisputably…contractual in nature" in that the employee agrees to perform services for the employer in exchange for compensation. Pierre v. Cap. One Fin. Corp., No. 21-CV-30, 2022 WL 801321, at *5 (E.D.N.Y. Mar. 16, 2022), appeal dismissed sub nom. Pierre v. Fairbank, No. 22-794, 2022 WL 2677364 (2d Cir. July 6, 2022) (quoting Hartzog v. Reebok Int'l Ltd., 77 F. Supp. 2d 478, 479 (S.D.N.Y. 1999)).

Here, plaintiff alleges that Charter employed him to work as a field technician in November 2015. Compl. ¶ 1. He alleges that after participating in Local 3's strike from March 2017 to November 2017, he resumed working for Charter on a full-time basis from November 17, 2017 until his termination in January 2020. Id. ¶¶ 1, 5–6, 9, 21. Taking plaintiff's allegations as true, as the Court must on a motion to dismiss, the question is not whether a valid employment contract existed between the parties, but whether there were terms included in the contract that "establish[ed] an express limitation" on defendant's "right to terminate at will." Hodge v. Abaco, LLC, 825 F. App'x 46, 47 (2d Cir. 2020) (summary order) (citation and internal quotation marks omitted).

To rebut the presumption of at-will employment at the motion to dismiss stage, a breach of contract claim[12] must allege that "(1) an express written policy limiting the employer's rights of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment." Baron v. Port Auth. of New York & New Jersey, 271 F.3d 81, 85 (2d Cir. 2001) (citation omitted); cf. Stamelman v. Fleishman-Hillard, Inc., No. 02-CV-8318, 2003

---

[12] In addition to a wrongful termination claim based on a breach of contract, an at-will employee may bring a claim for wrongful termination if they can show there was "a constitutionally impermissible purpose" or "a statutory proscription" regarding their termination. Lauture v. Int'l Bus. Machines Corp., 216 F.3d 258, 262 (2d Cir. 2000). Plaintiff's complaint does not allege that his termination was unconstitutional or that there was a statute limiting his termination by defendant.

10

WL 21782645, at *4 (S.D.N.Y. July 31, 2003) (stating that to rebut the presumption of at-will employment, an employee must show they "(1) [were] orally assured that the prospective employer only fired for just cause; (2) signed an employment application that incorporated the oral assurance; (3) rejected other offers of employment in reliance on the assurance; and (4) [were] instructed to proceed in strict compliance with the express employer policy…that employees be discharged only for just cause." (citing Weiner v. McGraw-Hill Inc., 57 N.Y. 2d 458, 465–66 (1982))). "[T]his is a difficult pleading burden[,]" and the "mere existence of a written policy" or "oral assurances with only general provisions" in the written policy do not give rise to a breach of contract claim. Baron, 271 F.3d at 85 n.2 (citations and internal quotation marks omitted).

Here, the 2017 letter does not constitute a written express policy limiting plaintiff's at-will employment status. The letter states that plaintiff's assignment was "permanent…through and after the end of the strike by Local 3." 2017 Letter [ECF No. 1-1 at 16]. This wording suggests that plaintiff's employment after the strike was for "an indefinite or unspecified term" and thus presumably at-will. Brown, 756 F.3d at 231. Moreover, given plaintiff signed the letter in the middle of a union strike, it is worth noting that an offer of "permanent" employment during a strike has been interpreted by the Supreme Court as "permit[ting] the employer who prevails in [the] strike to keep replacements [it] has hired" *at the strike's conclusion*. Belknap, Inc. v. Hale, 463 U.S. 491, 492–93 (1983) ("Where employees have engaged in an economic strike, the employer may hire permanent replacements whom it need not discharge even if the strikers offer to return to work unconditionally."). Nothing in the caselaw suggests that replacement workers hired during a strike maintain their employment for a "lifetime indefinite duration." Plf.'s Mem. of Law at 6.

Thus, the 2017 letter, standing alone, does not rebut the presumption that plaintiff's employment was at-will. Plaintiff does not identify any other written express policy rebutting this

11

at-will presumption. Indeed, plaintiff's opposition includes an "offer of employment" letter from defendant, dated February 15, 2019, that more clearly states, "[Charter] may terminate your employment at any time for any reason not prohibited by law or the collective bargaining agreement between [Charter] and the union, with or without notice." Plf.'s Opp, Ex. H [ECF No. 39-3 at 8]. Plaintiff also includes pages from a collective bargaining agreement ("CBA") between defendant and Local 3, though the CBA appears to have been in effect from 2009 to 2013 and likely not relevant to plaintiff's claim.[13] Plf.'s Opp., Ex. A [ECF No. 39-4 at 18–51]. Even if a CBA were in effect at the time of plaintiff's termination, plaintiff does not allege how the CBA's provisions might have applied to the terms of his individual employment.[14] Plaintiff's complaint fails to allege that the CBA or some other express writing limited Charter's right to discharge an employee, such that plaintiff could only be terminated for good cause.

Similarly, the oral assurance of a "six-step process" by Vice President Aziz, standing alone, does not modify plaintiff's at-will status. Plaintiff does not point to any express written policy incorporating Aziz's assurance into plaintiff's employment contract. See Stamelman, 2003 WL 21782645, at *4 (S.D.N.Y. July 31, 2003) (finding employer's general assurances insufficient to "transform an employment at will to a contract of permanent employment."). Furthermore, plaintiff's testimony at his UB appeal hearing about "a six-step process" is irrelevant. The hearing

---

[13] The CBA states, *inter alia*, that "nothing contained in this [CBA] shall be construed as a limitation of the Company's right to discharge immediately any employee for inefficiency, insubordination or any other just cause, subject to the right of the Union to demand arbitration as provided for herein" and that "in the event of the discharge… of any employee, the Company will notify the Business Representative of the Union or the Shop Steward for the purpose of holding a hearing." Plf's Opp., Ex A [ECF No. 39-4 at 30].

[14] "[C]laims that require interpretation of the CBA are preempted by federal labor law and treated as § 301 claims" under the Labor Management Relations Act ("LMRA"). Lever v. Entergy Nuclear Operations Inc., No. 15-CV-3327, 2016 WL 1627619, at *2–3 (E.D.N.Y. Apr. 22, 2016) (finding plaintiff's breach of contract claim involved "interpretation of rights and responsibilities" under a CBA and thus was preempted by the LMRA). If plaintiff's breach of contract claims were subject to interpretation of the CBA, it would likely be preempted by Section 301 of the LMRA and thus subject to Section 301's six-month statute of limitations. Id. at *4 (dismissing with prejudice plaintiff's LMRA § 301 claim as time barred).

was limited to the question of whether plaintiff was entitled to *unemployment benefits* and has no bearing on whether plaintiff has sufficiently alleged a breach of contract claim in this case.[15] See N.L.R.B. v. Kathleen's Bakeshop, LLC, No. 02-4673, 2003 WL 22221353, at *1 (2d Cir. Sept. 26, 2003) (summary order) (holding that a determination by New York's unemployment appeals board was irrelevant to the court's decision of whether plaintiff was wrongfully discharged).

It is not for the Court to decide whether on this record, defendant's purported reason for plaintiff's termination was justified or appropriate. Plaintiff's complaint fails to identify any express written policy, or oral assurance incorporated into a written policy, that would create an "implied-in-fact agreement" altering plaintiff's at-will employment status. See Hunter v. Kaufman Enterprises, Inc., No. 09-CV-5540, 2011 WL 3555809, at *5 (E.D.N.Y. Aug. 8, 2011) (finding plaintiff was an at-will employee and dismissing his breach of contract claim). Without any express contractual limitation altering plaintiff's at-will employment status, plaintiff cannot state a breach of contract claim. Plaintiff's allegations and attached filings, even considered together and liberally construed, fail to rebut the presumption of employment-at-will. Plaintiff therefore fails to state a plausible claim for breach of contract. Accordingly, the Court should grant defendant's motion to dismiss.

---

[15] The Court understands plaintiff's misunderstanding regarding the significance of the UB decision. Plaintiff was initially denied unemployment benefits at a clearly terrible time for him, and in his words, based on a "pretext[:]" because he was suspected of stealing a meter. Compl. ¶ 38. It does not appear that defendant gave plaintiff a hearing or an opportunity to be heard regarding its suspicion of the stolen meter. Instead, eleven days later, defendant summarily terminated plaintiff for going home during his shift to use the bathroom. Compl. ¶ 21. Plaintiff had already "made a manager [] aware" of stomach issues he was having in November 2019, and the time he spent "going home to use the bathroom" from November to January 2020. Id. ¶ 38. Nevertheless, when plaintiff applied for UB, defendant "tri[ed not] to allow his unemployment claim." Id. ¶ 29. Only on appeal six months later did the administrative judge find that plaintiff's "actions did not rise to the level of a qualifying misconduct." Id. ¶ 34. Plaintiff thus had to wait more than six months during a global pandemic to receive unemployment benefits.

III.   Leave to Amend

The Court is mindful that although leave to amend a complaint should be "freely given when justice so requires" under Rule 15(a), it is not always appropriate. Williams v. Citigroup, Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam). Specifically, the Court should deny leave to amend when it would be, among other reasons, futile. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) (noting that leave to amend may be denied for undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of amendment). Leave to amend is futile where a plaintiff cannot, in good faith, "address the deficiencies identified by the court and allege facts sufficient to support the claim." Panther Partners Inc. v. Ikanos Commc'ns, Inc., 347 F. App'x 617, 622 (2d Cir. 2009) (summary order) (citing Joblove v. Barr Labs., Inc., 466 F.3d 187, 220 (2d Cir. 2006)).

Because plaintiff's retaliation and negligence claims are time barred, any amendment to those claims would be futile. Therefore, I respectfully recommend that leave to amend should be denied as to those claims. Although it seems like a very unlikely long-shot, I recommend that plaintiff's breach of contract claim should be dismissed without prejudice with leave to amend. See Ahlers v. Rabinowitz, 684 F.3d 53, 66 (2d Cir. 2012) (noting that a *pro se* plaintiff should be granted "leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (citation and internal quotation marks omitted)). If this Report is adopted, plaintiff should be given thirty (30) days to file an amended complaint regarding his breach of contract claim.

## CONCLUSION

Accordingly, I respectfully recommend that defendant's motion to dismiss plaintiff's complaint should be granted for the reasons stated above.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: March 18, 2024
       Brooklyn, New York